GARRETT W. SNEDAKER v. D. S. POWELL.

1. OCCUPANCY OF HOUSE—*Master and Servant.* Where a person occupies a house as a servant of another, it must appear that the occupancy is for the benefit of the master, and as an accessory or aid to the performacce of his duties as a servant.

2. MASTER AND SERVANT; *Landlord and Tenant; Rent.* Where B. employs P. to labor for him on a farm for eight months from March 6, 1883, at fifty dollars per month, and agrees to furnish him a house from March 6, 1883, to March 1, 1884, free of charge, and subsequently permits P. to transfer his interest and sub-let the house to S., P. is no longer a servant of B. after the eight months have expired, and his occupancy of the house thereafter is that of a tenant and not of a servant, and S. holds under P. and not under B., and therefore is liable to P. for the rent of the house.

*Error from Morris District Court.*

THIS action grew out of a demand for house rent claimed by plaintiff, *D. S. Powell,* to be due him from *Garrett W. Snedaker* and wife as his tenants. Said claim was originally litigated in a justice's court, and from there appealed to the district court by defendant in error, and is founded upon an account which is in the words and figures as follows:

"COUNCIL GROVE, KAS., Jan. 13, 1884.

GARRETT SNEDAKER AND MRS. —— SNEDAKER to D. S. Powell—*Dr.:*

To four months' house rent—2 months, from Sept. 13, 1883, to
Nov. 13, 1883, at $5.............................. .... ................. $10
Two months, from Nov. 13, 1883, to Jan. 13, 1884, at $8............. 16
$26"

Upon the trial before the justice of the peace, judgment was rendered for the defendants for costs, and plaintiff then appealed to the district court, where the cause was tried by the court, E. S. W., judge *pro tem.* At the trial in the district court at the April Term for 1884, the plaintiff, D. S. Powell, to maintain the issues on his part, offered in evidence the following testimony, to wit: D. S. Powell, being duly sworn, testified as follows:

"I am the plaintiff in this action. I reside at present near Council Grove. During the summer and fall of 1883 I lived on the farm of N. Burnham, near White City, Kansas. I moved on the farm under a contract with N. Burnham, which was in writing and is as follows:

'This article of agreement, made and entered into this sixth day of March, 1883, between Nelson Burnham, of Peoria, Ill., of the first part, and D. S. Powell, of Council Grove, Kansas, party of the second part, witnesseth: That I, N. Burnham, party of the first part, by these presents do agree to pay D. S. Powell, party of the second part, fifty dollars per month for at least eight months from March 6, 1883, to work on my farm near White City, Kansas, and to furnish him house, and pasture for two cows and two horses, from March 6, 1883, to March 1, 1884, free of charge. And it is further agreed, that the party of the second part will look after the interest of the party of the first part, and see that his interests are not allowed to suffer during said eight months. NELSON BURNHAM.
D. S. POWELL.'

" This is the only contract I ever had with Mr. Burnham. About the first of September, 1883, Mr. Snedaker came to me and wanted me to let him move into a portion of the house. I told him that Burnham had been rather particular about the house, and he could not move in unless he got Burnham's per-

mission. Shortly afterward, about September 13, he brought me a note from Mr. Burnham, which is as follows : 'David S. Powell, you may let Mr. Snedaker have any part of the house that you and he may agree upon. I will be willing. — Sept. 10, 1883. — Resp., N. BURNHAM.' He then moved into the house. I did not give him express permission to do so, but I did not object after he gave me the note from Burnham. Nothing at that time was said in regard to his paying rent. I moved out of the house on the thirteenth day of November, 1883. Mr. Snedaker, about this time, asked me for the keys to the rooms I had been occupying. I told him he could not have them unless he paid me rent for the house."

(*Cross-examination.*) "The first time anything was ever said about rent was when I moved out of the house and Mr. Snedaker asked me for the key to one of my rooms. Mr. Burnham retained two rooms in the house for his own use whenever he should be there. The house contains eleven rooms. I never expressly rented any part of the house to Mr. Snedaker."

After the defendants presented their evidence, the court found the issues for the plaintiff, and rendered judgment in favor of Powell and against Garrett W. Snedaker for $16, together with the costs of the action. Snedaker excepted, and filed a motion for a new trial upon the ground that the judgment of the court is contrary to law and the evidence. This motion was overruled, and he brings the case here.

*Maloy & Kelley*, for plaintiff in error.

*J. M. Miller*, and *Morris L. Ritchie*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It is claimed by Snedaker (the plaintiff in error) that the agreement between Burnham and Powell discloses the fact that Powell was employed as Burnham's servant, and as a part consideration for his services was allowed to occupy a portion of his employer's house; and thereon it is further claimed that the relation of landlord and tenant between Burnham and Powell never existed; that the relation which did exist was that of master and servant; therefore, as no relation of landlord and tenant existed between Burnham and Powell, no such

relation existed between Powell and Snedaker; that Powell ought not to recover in this action, because Snedaker was not under any obligation, impliedly or otherwise, to pay rent to Powell, and that he held under Burnham and not Powell. (Wood's Landlord and Tenant, § 20, p. 53; *Bertie v. Beaumont*, 16 East, 34.)

The facts in this case, however, do not justify the conclusion of Snedaker, plaintiff in error. Powell demanded payment for two months' rent from September 13, 1883, to November 13, 1883, at $5 per month, amounting to $10; and also demanded judgment for two months' rent from November 13, 1883, to January 13, 1884, at $8 per month, amounting to $16. The district court rendered judgment for $16 only. We may therefore assume that the judgment was rendered for the rent from November 13, 1883, to January 13, 1884. Powell had the right to occupy the house of Burnham to March 1, 1884, free of charge. He was to work for eight months from March 6, 1883. This time expired prior to November 13, 1883. After he moved away, and perhaps quit work, the house belonging to Burnham was not an accessory or aid to the performance of Powell's duties as a servant. Under the contract Powell had paid by his labor and services for the use of the house to March 1, 1884; and even if the occupancy of the dwelling during his eight months' service was that of a servant and not as a tenant, yet after he had performed that service, the relation existing between Burnham and Powell was that of landlord and tenant. In order for a person to occupy as a servant, the occupancy must in some way be in aid of or necessary to the performance of service.

"The mere fact that the relation of master and servant exists, and that the servant occupies one of the master's rooms without paying rent therefor as a part of his compensation, is not of itself sufficient to establish a holding as a servant, but the occupancy must also be subsidiary and necessary to the service. It must be dependent upon and necessarily connected with the service, for if it is independent, or unconnected with the service and not in aid thereof, although the house belongs to the master and no rent is paid therefor; or even though the

house is hired by the master and he pays rent therefor, the occupancy is that of a tenant, and the master cannot eject him at will." (Wood's Landlord and Tenant, page 56.)

There is no evidence showing or tending to show that after November 13, 1883, the occupancy of the house was for the benefit of Burnham, or as an accessory or aid to the performance of the duties of Powell as a servant. For aught that appears, after the eight months had expired, there was no service to be performed by Powell, and yet Powell was entitled to the house for nearly four months thereafter. If the services of Powell had expired, clearly Burnham had no right to enter forcibly and oust him of the possession of the house, for he had expressly agreed with Powell that the latter should have the house until March 1, 1884, although his services as a servant might expire November 6, 1888. As Burnham permitted Powell to transfer his interest or sub-let the house to Snedaker, the latter held under Powell and not under Burnham. Snedaker was therefore liable for the rent which it was adjudged he must pay.

The judgment of the district court will be affirmed.

All the Justices concurring.