STATE v. JOHN W. SMITH and others.

*Forcible Entry—Landlord and Tenant.*

Where the prosecutor occupied, with his family, a house belonging to the defendant, several hundred yards distant from the defendant's dwelling-house, but on his plantation, under a contract by which, for his services as a laborer, the prosecutor was to have furnished him a dwelling place and a monthly allowance of meal and meat, with the privilege of cultivating a small strip of land for his own benefit, and the defendant, by threats and demonstration of deadly weapons and an array of numbers, against which resistance would have been useless, drove the prosecutor out of the house; *Held*, that the relation of lessor and lessee existed between the defendant and the prosecutor, and that the defendant and those aiding and abetting him were guilty of a *forcible entry*.

INDICTMENT for forcible entry, tried before *Shipp, J.*, at January Term, 1888, of the Superior Court of WAKE.

The defendants are charged in the indictment with a forcible entry into the dwelling house of the prosecutor, Jacob Etheridge, and expelling him therefrom, and upon the trial of their plea of not guilty, the jury find the facts in the following special verdict:

That the defendant, John Smith, hired the said Jacob Etheridge to work for him during the year 1887, as a laborer, on his farm in Wake County, agreeing to pay for his year's work fifty dollars in money, to furnish him with one bushel of meal and fifteen pounds of meat during each month of service, and a house to live in, and all the crops on three acres of land, which said Smith agreed to plow, and do all the plowing necessary for the crops which Etheridge might plant thereon, and Etheridge to do the other necessary work in the cultivation of the crop on the three acres; that Etheridge should have one half of every Saturday as his own; that under said agreement Etheridge was

put in and allowed to occupy a house on Smith's plantation some 300 or 400 yards from, and separate from Smith's dwelling house, and Etheridge continued to occupy the same until September 29, 1887, on which day said Smith and the other defendants went to the house so occupied by Etheridge, he and his wife being then therein, as were the other defendants, when said Smith notified said Etheridge to get out of the house, and to remove all his household goods therefrom, telling him that he, said Smith, intended to take possession by force, if it should be necessary to resort to force, in order to get possession; that Etheridge said he would get out of the house if he, Smith, would give him time, to which the other replied, "No, you have got to get out right now;" that thereupon Etheridge left the house with his wife, who got together the household goods, and defendants carried them off and put them down on the edge of the road, the said Smith saying, "don't you let me catch you on the premises again;" that said Smith had in his hands a double barrelled gun loaded with small shot, while defendant James had a pistol about his person which was seen by Etheridge, when the entry was made into the house by the former; that the other defendants accompanying Smith were his servants, two of them being his sons, and all went at his command, but no threats were made or force used by them; that Smith went on the premises to use such force as might become necessary to put Etheridge out of the house, and the others to aid him, if necessary, in doing so; that Smith, prior to this, had discharged Etheridge from his service for neglecting his work, and had given him notice to vacate the house; that Etheridge cultivated the three acres of ground whereon the house stood, Smith doing the plowing in cotton, corn and peas and potatoes; the cotton and corn crop being gathered by Smith previous to the expulsion, and which he still has in possession; that Smith was, before the removal of Etheridge and at that time, indebted to the latter, and still owes him, for

which Etheridge has since sued and recovered judgment for $40, from which an appeal was taken by Smith, and the action is still pending in the Superior Court of Wake.

If the Court, upon these facts, is of opinion that the defendants are guilty, then the jury find them guilty ; and if the Court be of opinion that they are not guilty, the jury so find.

This is the substance of the findings in the special verdict ; upon which the Court adjudged the defendants not guilty, and directed the verdict to be so entered, and the defendants discharged ; from which ruling and judgment the State appealed.

*The Attorney General* and *Mr. J. B. Batchelor,* for the State.
*Messrs. R. H. Battle* and *S. F. Mordecai,* for the defendants.

SMITH, C. J., (after stating the facts).    The opinion of the Court seems to have been controlled by the ruling in the case of the *State* v. *Curtis,* 4 D. & B., 222, in which there was also a special verdict, the facts contained in which were supposed to be essentially the same as those found in the present special verdict.

In that case RUFFIN, C. J., expressed the opinion that the entry and expulsion were sufficient in law to constitute the offence, if the possession of the house was in the tenant so as to make the entry of the owner unlawful; but that the possession, according to legal intendment, was in the defendant Curtis, and that he had a right to remove the occupant, provided " he did so without injury to his person or other breach of the peace."

In that case it was found that Curtis was lessee, for a term of years, of a tract of land near to the city of Raleigh, whereon he kept a boarding school for boys. There were several large buildings on the land, in one of which he and his family resided, and others were used for the accommodation of his

pupils.   There was also a small outhouse, with two rooms, within the yard or curtilage enclosing the other houses, but not connected with them by a common covering or roof, but the door of which opened into the yard.   The outhouse had been built and used for recitation rooms for the pupils, but was afterwards used for lodging rooms for servants attached to the establishment.   The prosecutor Pope was hired as a servant and steward, for the residue of the year at monthly wages, and was to be provided with board and lodging, suitable to his station, in the family, and he had for ten years previous held the same position in the school kept by previous proprietors, and occupied one of the rooms in the outhouse, and this he was permitted to do after his employment by Curtis, the other room being occupied, until his expulsion in October, 1838, after being discharged as a servant, for violating the rules of the school, and ordered to leave the premises.   It is needless to set out the manner of his expulsion, since the only matter in controvery was, whether the prosecutor's occupancy was such as to bring the violent entry of the lessee under the condemnation of the criminal law, as an invasion of the prosecutor's possession.   The ruling was against the State, and it is based upon the legal proposition, that the possession of the outhouse was in the defendant and not in the servant, who was permitted to occupy it merely as such, and for the defendant.

We do not think, in this feature of the case, it is the same as that now before us.   Etheridge occupied, with his family, a separate and distinct dwelling, several hundred yards from that of the defendant Smith, and under a special contract by which, for his services as a laborer, he was to have furnished him a dwelling place and a monthly allowance of meal and meat, as well as the privilege of cultivating a small strip of land for his own benefit.   Under this contract he went into possession, raised the crop, and, while in the occupancy of the house, was driven out, by threats and a demonstration of

deadly weapons, and an array of numbers, against which resistance would have been useless, and perhaps have put his life in peril.

There were created, in our opinion, the legal relations of lessor and lessee between the parties, which did not warrant this invasion of the prosecutor's possession of the premises, no more than if the house had been on other lands of Smith instead of the plantation whereon he lived.

In *State* v. *Ross*, 4 Jones, 315, the question arose as to the criminality of an entry upon land, in possession of one who had conveyed the title, but who continued to occupy under a parol agreement that he was to remain there many years. The entry was upon portions of the premises by force and after being forbidden, but the occupants of the house were not ejected, nor their possession of it invaded, nor entry made within the enclosure; these acts were held not to constitute the offence, and referring to conflicting rulings as to an entry under the title upon premises occupied by one who had none, PEARSON, J., suggests that the apparent discrepancies may be, perhaps, reconciled upon this distinction : " One having a right of entry may at common law use force, provided it does not amount to an actual breach of the peace, whereas one not having a right of entry is guilty of a trespass, indictable at common law, if he enter with a strong hand under circumstances calculated to excite terror, although the force used does not amount to a breach of the peace."

The tendency of such an invasion of the prosecutor's possession, as is shown in this case, was towards a breach of the peace, which obviously did not take place because of the hostile demonstrations and declared purpose of the defendants, which, with the means in their hands, over-awed opposition and forced a surrender; and this, too, when the prosecutor was to occupy the house during the year of his contract of service.

We think the law does not tolerate this summary method of seeking self redress, and that the prosecutor had a possession to warrant the commission of the imputed criminal act.

There is error, and judgment must be entered upon the verdict.

Reversed.