### M. A. SIMONS v. HARVEY LEBRUN.

(Filed 8 January, 1941.)

**1. Ejectment § 2—**

    Summary ejectment will lie only where the relationship of landlord and tenant existed between the parties under a lease contract, express or implied, and the tenant has held over after the expiration of the term, and while it is necessary that the tenant's entry should have been under a demise, *it need not be for a definite term,* a tenancy at will being sufficient. C. S., 2365, *et seq.*

**2. Landlord and Tenant § 1: Master and Servant § 4b—**

    Where the servant occupies premises of the master and the rent therefor is satisfied by service, the relation of landlord and tenant exists between the parties in regard to the premises unless occupancy by the servant is reasonably necessary for the better performance of the particular service, inseparable from it, or required by the master as essential to it.

**3. Same: Ejectment § 2—Under terms of contract, relation of landlord and tenant existed in regard to occupancy by servant, and summary ejectment would lie.**

    Plaintiff, the owner of two houses, entered into a contract with defendant under which defendant was employed to rent rooms and apartments

in the houses, care for and supervise the houses, collect rents, see that no cooking was done in either house except in the kitchen or basement thereof, with further provision that plaintiff was not to be liable for any expense other than emergency repairs unless he had previously authorized such expense, that plaintiff should not be liable for any part of cost of maid service unless the gross rents should exceed a specified sum per month, and that as compensation for his services defendant should be allowed to occupy his room and other parts of one of the houses not rented, without charge, and that the parties should divide gross rents received in any month in excess of a specified sum. The contract provided that either party might terminate the agreement at the end of any academic year upon thirty days notice to the other. *Held:* In regard to the occupancy by defendant the relation of landlord and tenant existed between the parties, since, obviously, defendant could not occupy both houses, and occupancy was not reasonably necessary for the better performance of the service or required by plaintiff as an essential thereto, and upon termination of the agreement in accordance with its terms, and the holding over of defendant thereafter, plaintiff may maintain an action in summary ejectment to regain possession of the part of the premises occupied by defendant.

**4. Appeal and Error § 8—**

Where defendant tenant does not controvert in the trial court the sufficiency of notice to quit, he will not be heard to do so in the Supreme Court on appeal, since an appeal will be determined in accordance with the theory of trial in the lower court.

APPEAL by defendant from *Harris, J.,* at June Term, 1940, of ORANGE.

Civil action in summary ejectment instituted 29 December, 1939, for possession of a dwelling house at No. 120 Marlette Street in the town of Chapel Hill, North Carolina, heard in Superior Court upon appeal thereto by defendant from judgment in the court of a justice of the peace.

Plaintiff claims that defendant was his tenant and that such tenancy has expired, but defendant continues to hold possession and refuses to vacate the property.

On the other hand, the contention of defendant in both courts, as shown in return to notice of appeal, and in the agreed statement of case on appeal, is that there is no lease, but that the contract establishes the relationship of employer and employee, and not that of landlord and tenant, and that, hence, the action should be dismissed for want of jurisdiction.

Upon the trial below plaintiff offered evidence tending to show these facts: On 11 September, 1939, plaintiff being the owner of two brick veneer houses at No. 120 and No. 122 Marlette Street in Chapel Hill, North Carolina, entered into a written agreement with the defendant, Harvey Lebrun, by the terms of which plaintiff employed defendant "as manager and custodian of said houses" for a term commencing 15 September, 1939, and ending 28 August, 1940. It was agreed therein "that

Harvey Lebrun shall be responsible: (1) for assistance in renting out the room or rooms not occupied by himself and his wife; (2) for collection, and weekly transmission to M. A. Simons of all rents; (3) for proper care and supervision of the houses; (4) for seeing that no unlawful use is made of the premises; (5) for seeing that no cooking shall be done in either house, except in the kitchen or basement of that house; and (6) for seeing that the rental contracts with roomers are carried out in full"; that "except in case of emergency repairs and replacements necessary to safeguard life or property, M. A. Simons shall not be held responsible for expenses of any kind incurred by Harvey Lebrun unless such expenses have previously been authorized by M. A. Simons"; that "when there are no additional roomers in the houses, Harvey Lebrun shall settle, at his own expense, all bills for light, fuel and maid service"; that "unless there are a sufficient number of roomers, in either or both houses, to bring in seventy-five dollars net income over and above the expense of paying a maid, no maid service shall be paid for out of the income from such house or houses"; that "the general scale of rentals to be charged and the general classes of roomers or tenants to be secured will be in accordance with instructions from M. A. Simons but that in details of rental, accounting, management, operation, and maintenance, and, in general, in all matters not specifically excepted elsewhere in this agreement, Harvey Lebrun shall have authority to act on his own initiative and discretion on behalf of M. A. Simons, as fully as though M. A. Simons were acting personally"; that "the advice of M. A. Simons will be obtained in advance of any important actions; that any actions, decisions, etc., affecting the rental and the management of these houses that may be subject to question or doubt will be discussed by Harvey Lebrun with M. A. Simons"; that "all expenses for taxes, assessments, insurance, improvements, equipment, furniture, furnishings, and repairs or replacements other than those necessitated by current use, wear and tear shall be handled and paid for by M. A. Simons"; that "such expenses shall not enter into any calculations of net income, profits, or commissions under this agreement"; that "if the net income from either house (after the payment of current expenses for operation and maintenance) is in excess of seventy-five dollars during any *money* (month) from September to May, inclusive, or in excess of fifty dollars during any month from June to August, inclusive, Harvey Lebrun shall receive, semi-monthly, on the first and fifteenth of each month, fifty per cent of any such excess on each house"; that "in case the kitchen at 120 Marlette Street is not rented out as part of an apartment, Mr. and Mrs. Harvey Lebrun shall occupy and use the kitchen, in addition to their other room"; that "in that case, if the frigidaire and the electric range are used by Mr. and Mrs. Lebrun during any month in which Harvey

SIMONS *v.* LEBRUN.

Lebrun is not already paying either all of the electricity bill" when there are no additional roomers, "or half" in ascertainment of net income as above provided, "and if the bill . . . is in excess of ten dollars ($10.00) during such month, such excess expense shall be shared on a 50-50 basis between Harvey Lebrun and M. A. Simons, provided that any amounts received from tenants for special uses of electricity shall be first charged off against this excess"; that "M. A. Simons shall, at all reasonable times, have full right of entry, inspection, installation, repairs, etc., to each house"; that "the terms and conditions of this agreement may be modified or canceled at any time by mutual consent"; that "the entire arrangement may be terminated at the end of any academic quarter, on thirty days' notice either from Harvey Lebrun to M. A. Simons or from M. A. Simons to Harvey Lebrun"; and that "in any notification, authorization, or other action under this agreement, either M. A. Simons or Harvey Lebrun may act either orally or in writing, . . ."

Evidence for plaintiff further tended to show that this agreement is the only one between the parties; that after the execution of said agreement defendant Harvey Lebrun went into, and has continuously remained in possession of the property; that plaintiff notified defendant several times orally that he was going to terminate the contract in accordance with the contract "at the end of any academic quarter," and on 16 November, 1939, gave defendant written notice in person, as follows: "Dear Mr. Lebrun: With regard to our 'agreement' of September 11, 1939, this is to remind you that 'The entire agreement may be terminated at the end of any academic quarter, on thirty days' notice either from Harvey Lebrun to M. A. Simons or from M. A. Simons to Harvey Lebrun.' In accordance with this provision, I hereby notify you to see to it that every one, including yourself, have vacated the house at 120 Marlette Street and has moved all of his belongings from it by December 16, 1939. Sincerely yours, Manning A. Simons"; that the last rent he accepted from defendant was around the first of December, 1939; that at the time he told defendant orally that he desired to terminate the arrangement, defendant said that they would be glad to get out; that defendant is married and he and his wife live at 120 Marlette Street; that defendant was not asked to vacate the house at No. 122 Marlette Street because he had never occupied rooms there; and that $75 is a fair monthly rental for the property at 120 Marlette Street.

Defendant, on the other hand, testified: That he entered the property at 120 Marlette Street under the terms of the contract on September 12, 1939; that he occupied one room continuously, used the kitchen after it was found that it could not be rented as a part of an apartment and occasionally used other rooms as they became vacant; that he is engaged in research and writing from which he earned his living; that he ac-

cepted employment from plaintiff to supplement his earnings; that he was not getting his living out of the house, but was supplementing his income in accordance with the contract; that he was not paying any rent to plaintiff but was only expected to turn over to him rents which he collected; that he was to occupy one or more rooms as available and was not to pay rent for them; and that he had made reports to plaintiff as long as he would accept same.

Defendant reserved exceptions to refusal of court to grant his motion for judgment as in case of nonsuit at close of plaintiff's evidence, and renewed at close of all the evidence.

These issues were submitted to and answered by the jury as follows:

"Was defendant tenant of plaintiff under contract entered into September 11, 1939, as alleged by plaintiff? Answer: 'Yes.'

"Did defendant hold over after termination of his estate and tenancy? Answer: 'Yes.'

"What is fair monthly rental value of the premises in controversy? Answer: '$65.00 per month.'"

The jury, under peremptory instructions from the court, answered both the first and the second issues as indicated. Defendant excepted to such instructions.

From judgment on the verdict, defendant appeals to Supreme Court and assigns error.

*Henry A. Whitfield for plaintiff, appellee.*
*L. J. Phipps for defendant, appellant.*

WINBORNE, J. By exceptions to the refusal of the court to grant his motions for judgment as in case of nonsuit under C. S., 567, and to the peremptory instructions as to the first and second issues, assigned as error, and by demurrer *ore tenus* in this Court, defendant appellant challenges the jurisdiction of the court over the subject matter of this action. In the light of the facts as they appear in the record on this appeal we are of opinion and hold that the challenge is not well founded.

The jurisdiction of a justice of the peace in civil actions for recovery of possession of real estate is entirely statutory—and is derived from the landlord and tenant act providing for summary ejectment. Chapter 46, Article 3, sections 2365, *et seq.*, of Consolidated Statutes of North Carolina, 1919. Such jurisdiction may be exercised only in cases where the relationship of landlord and tenant existed within the terms and meaning of the landlord and tenant act, and where the tenant holds over after the expiration of the term. *Credle v. Gibbs,* 65 N. C., 192; *McCombs v. Wallace,* 66 N. C., 481; *Hughes v. Mason,* 84 N. C., 473; *Forsythe v. Bullock,* 74 N. C., 135; *Parker v. Allen,* 84 N. C., 466; *McDonald*

*v. Ingram,* 124 N. C., 272, 31 S. E., 677; *Hauser v. Morrison,* 146 N. C., 248, 59 S. E., 693; *McIver v. R. R.,* 163 N. C., 544, 79 S. E., 1107; *McLaurin v. McIntyre,* 167 N. C., 350, 83 S. E., 627; *Ins. Co. v. Totten,* 203 N. C., 431, 166 S. E., 316.

In *Hughes v. Mason, supra, Dillard, J.,* speaking for the Court, said: "The landlord and tenant act in Battle's Revisal, ch. 64, sec. 19 (C. S., 2365), by its terms and the construction put upon it by the Court, gives the remedy of summary ejectment before a justice of the peace only in the case when the simple relation of lessor and lessee has existed and there is a holding over after the term has expired, either by afflux of time or by reason of some act done or omitted contrary to the stipulations in the lease."

In *McCombs v. Wallace, supra,* speaking of tenancy embraced within the meaning of the landlord and tenant act, the Court said: "Upon a careful consideration of this act, we think it was intended only to apply to a case in which the tenant entered into possession under some contract, either actual or implied, with the supposed landlord. . . . The words of the section clearly require that the entry should be under a demise of some sort, although there is no reason for saying that it must be for any definite term; it may be at will."

The plaintiff contends that while he employed the defendant as manager and custodian of the two houses at 120 and 122 Marlette Street in Chapel Hill, the entry into and occupancy by defendant and his wife of a room or rooms in the house at 120 Marlette Street was as tenant, and not as servant or employee, or agent. On the other hand, defendant contends that he entered and occupies the room as the employee of plaintiff and for that reason the remedy of summary ejectment is not open to plaintiff.

This basic question now arises: Did the relation of landlord and tenant or lessor and lessee, within the meaning of the landlord and tenant act, exist between plaintiff and defendant with respect to the house at 120 Marlette Street in Chapel Hill? If so, has the term of tenancy terminated? Upon the facts of this record, both questions are answered in the affirmative.

While, as a general rule, it is held that a person who occupies the premises of his employer as part of his compensation is in possession as a servant, and not as a tenant, where the occupancy is connected with, or is required for the necessary performance of his service, there are qualifications to the rule. A person may occupy premises as a tenant and yet be a servant of the owner, and where the occupation of the employer's premises is not a mere incident to the service, the principle of landlord and tenant applies, even though the rental is satisfied by service. Annotations 39 A. L. R., 1145-1149.

The trend of decisions on the subject in this State is reflected in the cases of *S. v. Smith,* 100 N. C., 466, 6 S. E., 84, and *Tucker v. Yarn Mill Co.,* 194 N. C., 756, 140 S. E., 744.

The case of *S. v. Smith, supra,* was a criminal prosecution for forcible entry, heard upon special verdict. The facts there are these: The defendant Smith hired Jacob Etheridge to work for him during 1887, as a laborer on his farm in Wake County, agreeing to pay for his services a stipulated amount of money, to furnish him with a certain monthly allowance of meal and meat, and a house to live in, and all crops on three acres of land to be worked by Etheridge, Smith to furnish the plowing. Under this agreement Etheridge was put in and allowed to occupy a house on Smith's plantation, separated several hundred yards from the Smith dwelling house. After having discharged Etheridge and given him notice to vacate the house, Smith, by threats and demonstrations of deadly weapon and an array of numbers, against which resistance would have been useless, drove Etheridge out of the house. The court below adjudged Smith to be not guilty. This Court, in reversing the judgment below, speaking through *Smith, C. J.,* after distinguishing the case of *S. v. Curtis,* 20 N. C., 363, where the building occupied by the servant was within the curtilage, said: "Etheridge occupied with his family a separate and distinct dwelling, several hundred yards from that of the defendant Smith, and under a special contract by which for his services as a laborer he was to have furnished him a dwelling place and a monthly allowance of meal and meat, as well as the privilege of cultivating a small strip of land for his own benefit. Under this contract he went into possession, raised the crop, and, while in the occupancy of the house, was driven out. There were created, in our opinion, the legal relations of lessor and lessee between the parties, which did not warrant the invasion of the prosecutor's possession of the premises no more than if he had been on other lands of Smith instead of on the plantation whereon he lived."

The case of *Tucker v. Yarn Mill Co., supra,* was an action for recovery of damage resulting from injury sustained by plaintiff in falling through a porch floor. There the plaintiff was employed by defendant as a spinner in defendant's mill. Defendant agreed to pay her weekly wages and also to furnish her a house in which to live during such time as she continues in its employment—the rent for which was deducted from her weekly wages. The plaintiff contended that while she was occupying the house the relationship between defendant and her was that of master and servant, or employer and employee, and not that of landlord and tenant. *Connor, J.,* speaking thereto, said: "While plaintiff was in defendant's mill, engaged in the performance of her duties as its employee, the relation between them was that of employer and em-

ployee, but while she was in the house, occupying it as her home, defendant was her landlord and she was its tenant. It cannot be held that plaintiff, while in a house furnished her by defendant, to be occupied by her as her home, was in a place furnished by her employer for the performance of her duties as an employee. The house was not furnished her as a place in which to work. When she entered this house she was in her home. Its duties to her, while in the house, arose solely from the relationship of landlord and tenant."

The trend of thought in textbooks and in decisions of other jurisdictions is that in order to establish relationship of master and servant, or employer and employee, with respect to occupancy by the servant, the occupancy must be reasonably necessary for the better performance of the particular service, inseparable from it, or required by the master as essential to it.

In Wood's Landlord and Tenant, Vol. 1, Second Edition, p. 81, the author states: "The question is, whether it is subservient and necessary to the service. The mere fact that the relation of master and servant exists, and that the servant occupies one of the master's rooms, without paying rent therefor, as a part of his compensation, is not of itself sufficient to establish a holding as a servant, but the occupancy must also be subsidiary, and necessary to the service. It must be dependent upon and necessarily connected with the service, for if it is independent or unconnected with the service, and not in aid thereof, although the house belongs to the master and no rent is paid therefor, or even though the house is hired by the master and he pays the rent therefor, the occupancy is that of a tenant, and the master cannot eject him at will." See *Snedaker v. Powell,* 32 Kan., 396, 4 Pac., 869.

In *Womach v. Jenkins,* 128 Mo. App., 408, 107 S. W., 423, *Johnson, J.,* said: "Where the occupation of the master's house by the servant is directly connected with the service, or if it is required expressly or impliedly by the employer for the necessary or better performance of the service, the relation of the parties with respect to the property is not that of landlord and tenant, but of master and servant, and the latter will be required by law to surrender possession of the premises at the end of the employment. . . . But there is no inconsistency between the relation of landlord and tenant and that of master and servant, and where, as in the case in hand, it appears that the occupation of the master's premises were not treated by the parties themselves as a mere incident of the service, it should be regarded in law as the occupation by a tenant, and the rights of the parties should be determined according to the laws and principles applicable to the relation of landlord and tenant."

In *Crossgrove v. A. C. L. R. R. Co.,* 30 Ga. App., 462, 118 S. E., 694, it is said: "It is possible for one to be a servant, and at the same time

a tenant of his master. He may have a contract of employment, and also a contract to rent a dwelling or parcel of land. If so, his right to retain possession of the premises, or to require a proceeding to remove him as a tenant, depends on the contract involved. If the occupancy is required expressly or impliedly by the employer, for the necessary or better performance of the service, and is subservient and not merely casual to the performance or better performance of the duties of the servant's employment, the relation of landlord and tenant does not exist. . . . But a servant whose occupancy is independent of his employment in the sense that it is not subservient thereto, even though liable to be terminated by the dissolution of the contract of employment, is a tenant at will. . . . The occupancy is not that of servant merely because it may be in some way connected with or convenient for the contract or duties of employment; but in order to render it such, the occupancy must be reasonably necessary for the better performance of the particular service, inseparable therefrom, or required by the master as essential thereto."

Applying these principles to the case in hand, the contract of employment does not require the defendant to occupy a room in either house, nor does it appear to be essential for it is self-evident that he could not actually occupy a room in both houses. It is, therefore, clear that the occupancy by defendant was as tenant of plaintiff.

Though it is admitted that defendant entered into possession of the room or rooms in the house at 120 Marlette Street under the agreement, it is silent as to the term. The occupancy is manifestly a tenancy at will which may be terminated at any time by either the landlord or the tenant. *Rental Co. v. Justice,* 212 N. C., 523, 193 S. E., 817.

In the court below defendant did not controvert the sufficiency of proof that 16 December, 1939, indicated in the notice to quit, was the end of an academic quarter. Hence, he cannot now be heard to do so. It is a well settled principle in this State that the theory upon which a case is tried in the courts below must prevail in considering the appeal and in interpreting a record and in determining the validity of exceptions. *Potts v. Ins. Co.,* 206 N. C., 257, 174 S. E., 123; *Gorham v. Ins. Co.,* 214 N. C., 526, 200 S. E., 5, and cases cited in each.

In the judgment below there is

No error.