R. P. HINSON, W. E. GARRISON, AND GEORGE SAMON v. TOM SHUGART.

(Filed 12 April, 1944.)

**1. Appeal and Error § 8—**

The theory upon which a case is tried in the Superior Court must prevail in considering the appeal and in interpreting the record and in determining the validity of the exceptions.

**2. Tenants in Common § 8—**

While, ordinarily, a tenant in common in dealing with third parties may not bind his cotenant by any act, with relation to the common property, not previously authorized or subsequently ratified, acts by one tenant, with relation to the common interest, are presumed to have been done by authority and for the benefit of a cotenant, if there be any circumstances upon which to base such presumption. And there is no presumption to the contrary.

**3. Trial § 32—**

Where the record does not show a request for specific instructions and the question not having been presented on the trial, a failure to charge on the subject will not be held for error.

APPEAL by plaintiff from *Stevens, Jr., J.,* at November Term, 1943, of ONSLOW.

Civil action to restrain defendant from making changes in structure of leased building and for recovery of damages sustained.

In the trial court the parties stipulated that plaintiffs R. P. Hinson and W. E. Garrison were from 25 May, 1942, to the present time the owners in fee simple of that lot of land in the town of Jacksonville, North Carolina, on which are located the Gizmo Cafe and the Estelle Summersill house, including the improvements and buildings thereon subject to contract between Hinson and Garrison and plaintiff George Samon, and subject to leases offered in evidence. And on the trial plaintiff offered evidence, in so far as pertinent to this appeal, tending to show these facts:

(1) That by contract dated 1 June, 1942, and duly registered 4 June, 1942, R. P. Hinson and wife and W. E. Garrison and wife, residents of Lincoln County, N. C., as parties of the first part, a few days after they purchased the property, leased to defendant as party of the second part the lot, improvements and buildings to which the above stipulation relates, for a period of three years, with agreement, among others, that "The party of the second part agrees to accept said premises in their present condition, and the said parties of the first part agree, during the term of this lease, to make such repairs as may be necessary to maintain said premises in their present condition, ordinary wear and tear excepted;

in the event that the party of the second part desires to make any changes in the building hereby leased to him he shall first obtain permission from the parties of the first part, if permission is granted for such changes, then the party of the second part shall pay all expenses incurred in said changes made."

(2) That on 28 November, 1942, the defendant sold and transferred to plaintiff George Samon his property and rights connected with, and good will of the business conducted by him under the name of Gizmo Cafe, and further conveyed to Samon "all of his leasehold interest that he has to the space occupied by the Gizmo Cafe as well as the house adjoining the said building with the exception of the front porch of said house, which is hereby reserved by the party of the first part for his use during the life of the aforementioned lease," it being "specifically understood that the reservation of the said porch is a part of the consideration of this contract and that no further rent shall be paid for the use of the said porch by party of the first part."

(3) That thereafter, on 11 January, 1943, R. P. Hinson and wife, and W. E. Garrison and wife, entered into a contract with George Samon for the sale by them to him of the lot and premises covered by their lease to defendant, but this contract was not filed for registration until 29 July, 1943.

(4) That at the time the lease was made there was on the front of the Estelle Summersill house an open porch about one and one-half feet above the ground, supported by sills on pillars, with banisters around it, and with rooms over it; that there was a door leading from the porch into the house, and there were two windows on the front opening on to the porch; that at the time defendant sublet to Samon the two front rooms in the house were used as storage rooms and the porch as a shoe shine stand; and that thereafter for several months the defendant continued to use the porch for shoe shine purposes and Samon used the two front rooms as living quarters, with the front door locked up "mostly," Samon used it "once in a while"—opened it in summer with screen door in place.

(5) That late in July, 1943, defendant tore away the open porch and enclosed the space from the ground up, with door entrance thereto from the street, and entirely shut up the door and windows formerly between the old porch and the front of the house—thereby cutting off air circulation, and depreciating the value of this property.

(6) That defendant did not say anything to Hinson or Garrison about the change, nor did he obtain their consent thereto, and though he did mention the subject to Samon from time to time, Samon did not agree for him to tear the porch away and close it up. (And in this connection it is noted in the record that while plaintiffs allege in their complaint,

and on the trial both Hinson and Garrison gave testimony tending to show that they did not give permission to defendant to make the changes in the porch, about which plaintiffs complain, there is neither allegation nor proof that Hinson was without authority to give such permission.)

(7) That plaintiffs Hinson and Garrison were together when they were negotiating with defendant "about the lease of these premises," but Hinson, as he testified, "made the trip down here to Jacksonville."

On the other hand, defendant offered evidence tending to show: That at the time he sublet the Estelle Summersill house to plaintiff Samon and when Samon took it over, the whole downstairs of the house was used for storage and the front windows and door were closed and nailed up and the window shades drawn; and that the door and windows stayed closed and the shoe shine business was continued on the porch until defendant started remodeling the porch. Defendant testified: "Mr. George Samon discussed what was going to be done with the porch time and again; we discussed when I would remodel it and why I did not go ahead and remodel it." And, continuing, defendant testified: "I leased the premises from Mr. Hinson and Mr. Garrison. After I obtained lease from them I had a conversation with Mr. Hinson regarding the remodeling of the front porch. He gave me permission to remodel the porch. He gave me ideas as to how to do it; said he would furnish part of the material from a hotel that he and Mr. Garrison owned in the mountains in the western part of the State, that they were going to dismantle, and were going to let me have the half doors to wall it in. . . . At the time of that conversation one of the Ramseur boys, Mr. Sparks and myself were all present, and were present all the time we were talking business. . . . The conversation took place either in the cafe or out on the porch adjoining the cafe." And on cross-examination defendant continued: "The porch was old and didn't look well. On one occasion Mr. Hinson came down and I had a conversation with him about the porch . . . I had a letter from him, but I lost the letter; I had permission from him and lost it and can't find it . . ."

Dewitt Sparks testified in corroboration of defendant as to conversation with plaintiff Hinson, concluding by saying, "I heard him tell Mr. Shugart he could go ahead and build and I saw a letter some time after the contract was closed."

Defendant further offered evidence tending to show that the changes in the porch increased the value of the property.

There was other testimony offered by the parties bearing upon their respective contentions.

These issues were submitted to and answered by the jury as shown:

"1. Did the defendant, Tom Shugart, without permission of the plaintiffs, injure, alter, remove or destroy the front porch described in the complaint? A. No.

"2. If so, what damages are the plaintiffs entitled to recover of the defendant therefor? A. Nothing."

From judgment on verdict plaintiffs appeal to Supreme Court and assign error.

*Moore & Corbett and Douglass & Douglass for plaintiff, appellants.*

*John D. Warlick, Albert Ellis, and Bailey, Holding, Lassiter & Wyatt for defendant, appellee.*

WINBORNE, J. The theory upon which the plaintiffs presented the case, and upon which it was tried in Superior Court, as is disclosed by the record and case on appeal, is that no permission was given by either Hinson or Garrison to defendant to make the changes in the structure of the porch to the Estelle Summersill house, as required by the terms of the lease. No evidence appears to have been offered, and no contention appears to have been made that Hinson was without authority to act for the lessors of the property, Hinson and Garrison, who owned it as cotenants. But, if such contention had been made, there is sufficient evidence on which to base a presumption that Hinson had authority to act for his cotenant Garrison as well as for himself. Therefore, decision on the first issue was made to rest upon the question as to whether Hinson gave permission to defendant. There is evidence in behalf of plaintiffs that he did not give such permission. And there is evidence in behalf of defendant that he did give such permission. Thus a clear-cut issue of fact in that respect was presented to the jury and the jury has answered in favor of defendant.

It is a well settled principle in this State that the theory upon which a case is tried in Superior Court must prevail in considering the appeal and in interpreting the record and in determining the validity of exceptions. *Simons v. Lebrun,* 219 N. C., 42, 12 S. E. (2d), 644, and cases cited. See also cases in N. C. Digest, Vol. 2, Appeal and Error, 171 (1).

Hence, the first question of law raised on this appeal, that is, whether one tenant in common may bind his cotenant with respect to common property, was not mooted on the hearing and does not arise on the record. But assuming that it does, it may not be amiss to say that while under ordinary circumstances a tenant in common in dealing with third parties may not bind his cotenant by any act with relation to the common property not previously authorized or subsequently ratified, acts by one tenant with relation to the common interest are presumed to have been done by authority and for the benefit of his cotenant, if there be any circumstances upon which to base such presumption. Moreover, it will not be presumed that a tenant in common entered into an agreement with relation to the common property without the consent of his cotenant. 62

C. J., 533 and 535. Subject Tenancy in Common, sections 209, 210. *Cf. Hudson v. Cozart,* 179 N. C., 247, 102 S. E., 278.

In the light of these principles there appears in the record these evidentiary facts: Both Hinson and Garrison reside at Lincolnton, N. C., in the western part of the State. Together they purchased the property in Jacksonville, N. C., in the eastern part of the State. A few days thereafter they acted together in negotiating the lease, and in leasing it to defendant. They acted together in agreeing in the lease that upon permission from them as "parties of the first part" defendant at his own expense might make changes in the building leased to him by them. And Hinson made the trip to Jacksonville in connection with the property. This indicates a close association and unity of action between Hinson and Garrison as regards this property, and shows Hinson looking after it. From this it may be presumed that Hinson was acting with authority of Garrison.

The next question is that the court failed to charge the law relating to authority of one tenant in common to bind his cotenant. The record fails to show that such instruction was requested, and the question was not presented on the trial. Hence, failure to charge on the subject will not be held for error. See *Simons v. Lebrun, supra,* and other citations above to which reference is made.

The third and last question is whether plaintiffs were entitled to a directed verdict upon all the evidence. The record fails to show a request for peremptory instruction for verdict in favor of plaintiffs and no exception in this respect appears to have been taken on the trial. Hence, the question may not be considered. And, in any event, under the law as applied to the evidence, such instruction would not have been correct.

After careful consideration we fail to find cause for disturbing verdict of the jury.

No error.