J. RUSSELL TERRY, PLAINTIFF APPELLANT v. BROTHERS INVESTMENT COM-
PANY, DEFENDANT APPELLEE AND THIRD PARTY PLAINTIFF APPELLANT v.
JOHN BASS BROWN, MILDRED B. MONTGOMERY, SUTHERLAND M.
BROWN, CARRIE M. GILCHRIST, DOLPH M. YOUNG, SADIE YOUNG
HOLLAND, PETER M. B. YOUNG, AND WILLIAM P. YOUNG, THIRD PARTY
DEFENDANT, APPELLEES

No. 8426SC1332

(Filed 1 October 1985)

1. **Registration § 3— acceptance of conveyance subject to unrecorded claim—rati-
fication**
    When a grantee accepts a conveyance of property subject to an outstand-
ing claim or interest evidenced by an unrecorded instrument executed by his
grantor, he takes the property burdened by that claim or interest. By accept-
ing such a deed he ratifies the unrecorded instrument and agrees to take the
property subject to it and is estopped to deny the unrecorded instrument's
validity.

2. **Registration § 3— trustee's deed—chain of title of subsequent purchaser**
    Where testatrix's will devised realty in trust to NCNB and an individual
as trustees, provided that the income should be paid to the individual for life,
gave the trustees the power to sell the realty, and provided that, upon the
death of the individual trustee, the remaining property would vest in fee sim-
ple in the children of testatrix's brother and sister, a deed from NCNB as
trustee conveying the remaining property to the children of testatrix's brother
and sister as tenants in common after the individual trustee's death was a
deed within the chain of title of the purchaser of the property from the
tenants in common.

3. **Registration § 3— purchaser bound by unrecorded lease**
    The purchaser of property was bound by a prior unrecorded lease,
although the purchaser's deed did not mention the prior lease, where a deed in

1

the purchaser's chain of title provided that the conveyed property "is subject to the rights of tenants in possession pursuant to the terms of a Lease between Carrie Marshall Gallaway and Brothers Investment Company dated March 21, 1963," since the reference to the lease in the prior deed was sufficient to meet the four requirements of *Hardy v. Fryer*, 194 N.C. 420, 139 S.E. 833 (1927). The requirement that the amount of the prior encumbrance be definitely stated was met even though the reference did not state that the lease term was more than three years where it could be determined from the stated date of the lease and the date of the deed that the lease was for a term in excess of three years.

**4. Landlord and Tenant § 13.3; Tenants in Common § 5— renewal of lease — notice to two of eight co-tenants**

Defendant lessee validly exercised its option to renew the lease by mailing notice to two of the eight co-tenant owners where defendant had been directed to send rental checks to the two co-tenants and had done so for a period of eight years, since under such circumstances it is presumed that the acts of the two co-tenants in accepting notice of renewal were done with the authority and for the benefit of all eight co-tenants.

APPEAL by plaintiff from *Snepp, Judge*. Judgment entered 20 July 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 28 August 1985.

This civil action arose out of a dispute over certain property located in Mecklenburg County (the Property). The plaintiff, J. Russell Terry (Terry) filed this action against North Carolina National Bank (NCNB), Ashley Services, Inc. and Brothers Investment Company (Brothers) seeking a declaratory judgment that he holds title to the disputed property free and clear of Brothers' asserted leasehold interest. NCNB and Ashley Services, Inc. are sublessees of Brothers. All claims against these sublessees were subsequently discontinued. Brothers filed counterclaims seeking a declaratory judgment that Terry's title to the Property is subject to Brothers' leasehold interest in the Property. Brothers also joined as third-party defendants, John Bass Brown, Jr. *et al.* who were successors in interest to Brothers' lessors and had conveyed the Property to Terry. In its action against the third-party defendants, Brothers sought a declaratory judgment that the third-party defendants held the Property subject to Brothers' leasehold interest in the Property and that title conveyed by the third-party defendants to Terry was subject to Brothers' leasehold interest.

The essential facts are:

On 21 March 1963 Brothers, as lessee, entered into a lease agreement (the "Gallaway Lease") with Carrie Marshall Gallaway, as lessor whereby Brothers leased the Property for twenty years with an option to renew for an additional thirty years. Brothers began paying rent in 1963. On 10 November 1969 Brothers by written instrument subleased a portion of the Property to NCNB for a 15 year term with an option to renew for an additional 20 years. NCNB constructed a branch bank on the leased property and has been in possession since 1970. Brothers continued to pay rent to Carrie Marshall Gallaway until her death on 8 November 1972. Under the terms of Carrie Marshall Gallaway's will (the "Gallaway will") the Property was devised in trust to North Carolina National Bank ("NCNB") and Gaston G. Gallaway, as trustees. After Carrie Marshall Gallaway's death, Brothers made all rental payments to NCNB and Gaston G. Gallaway.

The terms of the Gallaway will provided that the Property be held in trust until the death of Gaston G. Gallaway. At his death, the Gallaway will provided that the remaining property would vest in fee simple in the children of Nancy Brown Young and John Bass Brown sister and brother of Carrie Marshall Gallaway.

On 30 June 1974 when Gaston G. Gallaway died, the remaindermen under the Gallaway will were John Bass Brown, Jr., Mildred B. Montgomery, Sutherland M. Brown, Carrie M. Gilchrist, Dolph M. Young, Sadie Young Holland, Peter M. B. Young and William P. Young (referred to collectively as the "Gallaway heirs"). On 26 September 1974, NCNB, acting as executor and trustee under the Gallaway will, executed a deed conveying the Property to the Gallaway heirs as tenants in common (the "NCNB deed"). The NCNB deed was recorded on 30 September 1974. The NCNB deed provided that "[t]he above described parcel is subject to the rights of tenants in possession pursuant to the terms of a Lease between Carrie Marshall Gallaway and Brothers Investment Company dated March 21, 1963."

On 2 October 1974, NCNB by letter informed Brothers of the transfer of the Property to the Gallaway heirs and instructed Brothers to make rent payments to Mildred B. Montgomery and Dolph M. Young. From November 1974 through October 1982 Brothers made all rental payments as instructed in the NCNB let-

ter. The Gallaway lease gave Brothers the right to renew the lease for an additional 30 years provided written notice of the exercise of the right to renew was given at least one year before the end of the lease term. On 23 June 1980 Brothers mailed written notices of its exercise of the right to renew to two of the Gallaway heirs, Mildred B. Montgomery and Dolph M. Young.

On 25 August 1980 Brothers subleased by written sublease agreement a portion of the Property to S. M. Horton Car Wash Equipment Company for a term of twenty years beginning 1 December 1980. Thereafter, Horton constructed a car wash facility on the leased premises and on 24 December 1980 assigned its right under the sublease agreement by written instrument to Ashley Services, Inc.

In May 1982, Dolph M. Young, one of the Gallaway heirs contacted the plaintiff Terry and offered to sell the Property for $275,000.00 with attractive financing terms. Young explained to Terry that there was an unrecorded lease on the Property which was binding on the Gallaway heirs but would probably not be binding on Terry if he decided to buy the Property. Terry was furnished a copy of the Gallaway lease in June 1982. He also requested that his attorneys review the NCNB deed.

By deed dated 26 July 1982 and recorded 24 September 1982 the Gallaway heirs conveyed their interest in the Property to Terry by warranty deed which expressly provided that it was not intended that the Property be conveyed subject to any leases or the rights of any parties who may be in possession. The Gallaway heirs accepted a down payment of $6,000.00 and a purchase money deed of trust in the principal amount of $269,000.00. On 4 October 1982, Terry notified Brothers of his claim to the property and stated that he did not recognize the Gallaway lease or Brothers' claims of the right to possession.

On 5 October 1981 a memorandum of the NCNB sublease with Brothers was recorded. On 12 October 1982 the written assignment of the sublease between Horton Car Wash Equipment Company and Ashley Services, Inc. was recorded. Finally, on 9 November 1982 the original lease between Carrie Marshall Gallaway and Brothers was recorded.

At the hearing on cross motions for summary judgment filed by Terry, Brothers and the Gallaway heirs (third-party defendants), the Honorable Frank W. Snepp, Jr. granted summary judgment in favor of Brothers and against Terry as to the binding effect of the lease upon Terry. He also granted summary judgment in favor of Terry and against Brothers with respect to Brothers' counterclaims, and granted summary judgment in favor of the Gallaway heirs and against Brothers, with respect to the issues raised in the third-party complaint.

From the entry of summary judgment against him and in favor of Brothers, Terry appeals. Brothers asserts protective assignments of error.

*Kenneth W. Parsons for plaintiff-appellant.*

*Parker, Poe, Thompson, Bernstein, Gage and Preston by William E. Poe and Irvin W. Hankins, III for defendant-appellee and third-party plaintiff-appellant.*

*Murchison, Guthrie and Davis by Alton G. Murchison, III for third-party defendant-appellees.*

EAGLES, Judge.

I

The first issue to be decided here is whether the plaintiff holds the Property subject to the Gallaway lease. We hold that he does.

The plaintiff contends that he holds the Property free and clear of the Gallaway lease because at the time he acquired the Property the lease had not been recorded as required by the Connor Act. G.S. 47-18. The portion of the Act on which plaintiff relies provides:

(a) No . . . (iv) lease of land for more than three years shall be valid to pass any property interest as against lien creditors or purchasers for a valuable consideration from the donor, bargainor or lessor but from the time of registration thereof in the county where the land lies. . . .

The lease at the heart of this controversy was executed on 21 March 1963 with a lease term of 20 years plus a 30 year renewal

option. It was not recorded until 9 November 1982. The Property was conveyed to the plaintiff on 26 July 1982 and the deed to plaintiff was recorded on 24 September 1982. Plaintiff properly insists that no notice however full and formal will supply the want of registration. *Collins v. Davis*, 132 N.C. 106, 43 S.E. 579 (1903). This principle of notice by recordation only is strictly adhered to by our courts, *State Trust Co. v. Braznell*, 227 N.C. 211, 41 S.E. 2d 744 (1947), and the Connor Act would, on its face, give the plaintiff the right to eject Brothers, its lessee, and the sublessees.

[1]   However, when a grantee accepts a conveyance of property subject to an outstanding claim or interest evidenced by an unrecorded instrument executed by his grantor, he takes the property burdened by that claim or interest. By accepting such a deed he ratifies the unrecorded instrument and agrees to take the property subject to it and is estopped to deny the unrecorded instrument's validity. *State Trust Co. v. Braznell, supra.* This principle is not based on notice and does not operate as an "exception" to the pure-race theory of title in North Carolina. It derives from the theory that reference to the unrecorded encumbrance, if made with sufficient certainty, creates a trust or agreement that the property is held subject to the encumbrance. *Hardy v. Fryer*, 194 N.C. 420, 139 S.E. 833 (1927).

Our Supreme Court in *Hardy v. Fryer, supra*, specifically addressed the effect of a reference in a recorded instrument to a prior unrecorded encumbrance and under what circumstances it constitutes a valid, enforceable lien by the holder of the prior unrecorded encumbrance. The court listed four requirements or conditions that must be met before a reference to a prior unrecorded encumbrance will constitute a valid lien. They are:

1. The creditor holding the prior unregistered encumbrance must be named and identified with certainty.

2. The property must be conveyed "subject to" or in subordination to such prior encumbrance.

3. The amount of such prior encumbrance must be definitely stated.

4. The reference to the prior unregistered encumbrance must amount to a ratification and adoption thereof.

*Id.* at 422, 139 S.E. at 834.

From the facts of this case two factual distinctions appear. First, the plaintiff's deed from the Gallaway heirs makes no mention of the prior unrecorded lease and contains none of the requirements as set out in *Hardy v. Fryer, supra.* Second, the unrecorded lease was not executed by plaintiff's grantors, the Gallaway heirs. The lease was executed by Carrie Marshall Gallaway, ancestor of the Gallaway heirs. However, we do not believe that these factual distinctions prevent the principles announced in *State Trust Co. v. Braznell, supra,* and *Hardy v. Fryer, supra,* from applying to this case.

*Hardy v. Fryer, supra,* involved a question of priority between two mortgages. A brief summary of the pertinent facts may prove helpful. In 1920 J. T. Harris sold certain property to the plaintiff, Hardy, and a deed was immediately recorded. At the time of sale, the plaintiff executed a mortgage to the defendant Farmville Building and Loan Association, but the mortgage was not recorded until three years later. The plaintiff also executed a mortgage in favor of Harris, the seller. This mortgage was recorded first. Harris then transferred the mortgage to Fountain Bank which in turn sold the notes to one Fryer. The deed from Harris to Hardy contained the following reference:

That the [property] is free and clear of all encumbrances except mortgage to the Farmville Building and Loan Association, which is hereby assumed by the party of the second part, which assumption is part of the purchase price hereof.

*Hardy v. Fryer,* at 421, 139 S.E. at 833.

Defendant Fountain Bank argued that it could not be bound by the reference in the deed because it was not a party to the deed and its mortgage contained no reference to the prior encumbrance. Our Supreme Court rejected this argument stating that since the reference occurred in a conveyance which was an essential part of defendant Fountain Bank's chain of title, the Bank was charged with full notice of the provisions contained in that deed. *Hardy v. Fryer, supra.* Accordingly, under North Carolina law, if there exists an expression of subordination to a prior unrecorded

encumbrance in an instrument within a subsequent grantee's chain of title that is sufficient under the requirements of *Hardy v. Fryer, supra,* then the subsequent grantee, by accepting his deed, ratifies the unrecorded encumbrance and is estopped from asserting the invalidity of the encumbrance. *State Trust Co. v. Braznell, supra.*

Although *Hardy v. Fryer* involved a battle for priority between two mortgages and not a leasehold interest, we believe that the same principles should apply here. In order to decide if the lease, unrecorded at the time the property was transferred to the plaintiff, is valid and binding on the plaintiff under the rule of *Hardy v. Fryer,* we must answer two questions. Is the NCNB deed within the plaintiff's chain of title? If so, is the reference to the prior unrecorded lease contained in the NCNB deed sufficient under the *Hardy v. Fryer* four-part analysis to constitute a valid lien?

[2]   We hold that the NCNB deed is within plaintiff's chain of title. By Item IX, the Gallaway will directed that the remainder of the real estate be placed in trust with NCNB and Gaston G. Gallaway named as trustees. Item IX(a) of the Gallaway will gave the trustees power to hold, manage, invest and re-invest the property. Item IX(b)(2) authorized the Trustees to sell the real property if a sale would be in the best interests of the estate. Item IX(c) provided that the trustees pay over to Gaston G. Gallaway the net income from the rest and residue of the real estate for his lifetime, and

> upon his death, said trust, as to such *remaining* property, shall terminate and the title to said property shall thereupon vest in fee simple, share and share alike, in the children of my sister, Nancy Brown Young, and my brother, John Bass Brown, then living and the issue of such as may then be dead, per stirpes. [Emphasis added.]

Given this language and the trustees' power to sell, a deed from the trustee was necessary to ascertain, for title examination purposes, what property existed for distribution to the surviving Gallaway heirs and the identity of those surviving heirs.

At the death of Gaston Gallaway the trust terminated. At that time, it was the duty of the surviving trustee, NCNB, to dis-

tribute the remaining property held in trust to those heirs entitled to take. *First Citizens Bank and Trust Co. v. Carr*, 279 N.C. 539, 184 S.E. 2d 268 (1971). *See* Bogert, The Law of Trusts and Trustees Section 1010 (rev. 2d ed. 1983). A careful and prudent title examiner having the knowledge that the Gallaway heirs took the Property either by the will of Carrie Marshall Gallaway or by deed would discover the NCNB deed to the Gallaway heirs executed 26 September 1974 and recorded 30 September 1974. An examination of the Gallaway will would reveal the creation of the trust and the grant of power to the trustees to sell the real property. This information would lead the careful and prudent title examiner to check all out conveyances of NCNB as trustee. The NCNB deed would be discovered. Further, even if the examiner began his search instead with the grantee index in the name of the Gallaway heirs, the discovery of the NCNB deed would be inevitable.

[3]   Having determined that the NCNB deed is within plaintiff's chain of title, we must now decide whether the reference contained in the deed to the prior unrecorded lease satisfies the four-part analysis of *Hardy v. Fryer, supra.* We hold that the reference as set out in the NCNB deed sufficiently complies with the *Hardy v. Fryer* requirements. The pertinent language taken from the NCNB deed dated 26 September 1974 is as follows: "The above described parcel is subject to the rights of tenants in possession pursuant to the terms of a Lease between Carrie Marshall Gallaway and Brothers Investment Company dated March 21, 1963."

In oral argument plaintiff's counsel candidly conceded that requirements one, two and four were met by the above quoted reference. Plaintiff's counsel argued that the third requirement of *Hardy v. Fryer* — that the amount of the prior encumbrance must be definitely stated — was not satisfied by the above quoted reference. Here we are dealing with a lease and not a mortgage as was the case in *Hardy v. Fryer, supra.* Plaintiff contends that the omission in the reference that the lease term was for more than three years constitutes a failure to meet this third requirement. We are not persuaded. The date the lease was executed is stated — 21 March 1963. The NCNB deed was executed on 26 September 1974. By simple mathematical calculation it can be easily determined that the lease was for a term in excess of three years. We

do not find this omission fatal under the four-part analysis of *Hardy v. Fryer, supra.*

In summary, we find that the NCNB deed to the Gallaway heirs was within plaintiff's chain of title and that it sufficiently described the unrecorded lease as to bring it within the four part analysis of *Hardy v. Fryer.* Consequently, we hold that the plaintiff took the property subject to the unrecorded lease.

## II

[4] The next issue is whether the record supports the trial court's determination that the defendant Brothers validly exercised its option to renew. We hold that it does.

The lease required that defendant Brothers give written notice of its intention to exercise the right to renew "not less than one (1) year prior to the end of the original term of [the] lease." The lease's original term would have expired 31 December 1982. Brothers exercised its right to renew the lease on 23 June 1980 by mailing written notices to Mildred Montgomery and Dolph M. Young. These were the only two of the eight co-tenants that Brothers had dealt with since the execution of the NCNB deed in 1974. Plaintiff does not dispute that the notices were timely, however, he contends that the lease renewal was ineffective because notices were not mailed to all eight co-tenants. Plaintiff offers no support for this contention.

North Carolina courts have recognized that the acts of one co-tenant with relation to the common property may be presumed to have been done with authority and for the benefit of all co-tenants if there are circumstances on which to base that presumption. *Hinson v. Shugart,* 224 N.C. 207, 29 S.E. 2d 694 (1944); *see* J. Webster, Real Estate Law in North Carolina Section 113 n. 41 (P. Hetrick rev. ed. 1981). In 1974, shortly after the NCNB deed to the Gallaway heirs, Brothers was notified by letter from NCNB that all future rental checks were to be sent to Mildred Montgomery in the amount of $171.42 and to Dolph Young in the amount of $228.58. For the next eight years — up until the time the written notices were mailed — all rental checks were sent as instructed to those two individuals. We find that based on these facts, there are sufficient circumstances on which to base the presumption that the acts of the two co-tenants in accepting notice of the

renewal were done with the authority and for the benefit of all eight co-tenants.

The remaining issues and assignments of error deal with defendant Brothers' protective appeal. Since we affirm the trial court's entry of summary judgment in favor of defendant Brothers, we need not address those issues.

Affirmed.

Judges JOHNSON and PARKER concur.